JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Robert W. Gaffey
Jayant W. Tambe
Todd R. Geremia
Mahesh Venkatakrishnan

*Attorneys for Plaintiffs,*
*Lehman Brothers Holdings Inc.*
*and Lehman Brothers OTC Derivatives Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re:                                                      :   Dist. Ct. Case No. 14-cv-00293 (JGK)
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                    :
                                                            :
                                    Debtors.                :   Chapter 11
                                                            :
------------------------------------------------------------X   Case No. 08-13555 (JMP)
                                                            :   (Jointly Administered)
LEHMAN BROTHERS HOLDINGS INC. and                           :
                                                            :
LEHMAN BROTHERS OTC DERIVATIVES INC.:                       :
                                                            :   Adv. Proc. No. 13-01340 (JMP)
                                                            :
                                                            :
                                    Plaintiffs,             :
                                                            :
v.                                                          :
                                                            :
INTEL CORP.,                                                :
                                                            :
                                                            :
                                                            X
                                    Defendant.
---------------------------------------------------------------

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO INTEL'S MOTION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    PLAINTIFFS' CLAIM ................................................................ 2

    B.    OVERVIEW OF PROCEEDINGS IN THE BANKRUPTCY COURT ............... 4

    C.    THE BANKRUPTCY COURT'S RULING ON INTEL'S MOTION TO DISMISS ................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.    STANDARD FOR WITHDRAWAL OF THE REFERENCE ....................... 6

II.    THE REFERENCE SHOULD NOT BE WITHDRAWN ............................ 7

    A.    The *Orion* Factors Do Not Favor Withdrawing the Reference ........................... 7

        1.    Allowing the Bankruptcy Court to Retain Its Jurisdiction Will Promote Judicial Economy and Efficiency ................................. 7

        2.    The Non-Core Nature of LOTC's Claim Does Not Trump the Efficiency Concerns for Maintaining the Reference Here ...................... 16

        3.    The Parties' Jury Waiver Strongly Supports Allowing the Bankruptcy Court to Retain Its Jurisdiction ........................... 19

        4.    Allowing the Bankruptcy Court to Retain Its Jurisdiction Will Promote Uniformity ............................................. 21

        5.    Allowing the Bankruptcy Court to Retain Jurisdiction Will Prevent Forum Shopping ................................................. 22

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

*Bd. of Educ. of Chicago v. Lehman Bros. Special Fin. Inc.*,
   No. 09-01455 (Bankr. S.D.N.Y. closed Feb. 4, 2010)............................................................11

*California v. Enron Corp.*,
   No. 05 Civ. 4079 (GBD), 2005 WL 1185804 (S.D.N.Y. May 18, 2005)...............................10

*Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*,
   905 F. Supp. 2d 526 (S.D.N.Y. 2012).................................................................................15

*Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Brothers)*,
   No. 11 Civ. 4949 (PAE), 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ..............................15

*Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.)*,
   No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 08, 2003)....................................... passim

*Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*,
   2004 WL 2149124 (S.D.N.Y. Sept. 23, 2004)......................................................................22

*Fed. Home Loan Bank of Pittsburgh v. Lehman Bros. Holdings Inc.*,
   No. 09-01393 (Bankr. S.D.N.Y. closed May 3, 2011) ..........................................................11

*Hassett v. Citicorp N.A., Inc. (In re CIS Corp.)*,
   No. 92 Civ. 1325 (CSH), 1994 WL 524987 (S.D.N.Y. Sept. 27, 1994)................................17

*In re EMS Fin. Servs., LLC*,
   491 B.R. 196 (E.D.N.Y. 2013) ............................................................................................15

*In re Fairfield Sentry Ltd.*,
   No. 10 Civ. 7340, 2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010) .................................. passim

*In re Lehman Bros. Holding Inc.*,
   13 Civ. 07481 (LGS), 2013 WL 6633431 (S.D.N.Y. Dec. 17, 2013) (Schofield, J.)..........8, 14

*In re Lenders Abstract & Settlement Serv., Inc.*,
   493 B.R. 385 (E.D.N.Y. 2013) ............................................................................................15

*Kirschner v. Agoglia*,
   476 B.R. 75 (S.D.N.Y. 2012)...............................................................................................15

*Lehman Bros. Holdings, Inc. v. Ford Global Treasury, Inc.*,
   No. 12-01877 (Bankr. S.D.N.Y. filed Sept. 18, 2012 .................................................. passim

**TABLE OF AUTHORITIES**
**(CON'T)**

**Page**

*Lehman Bros. Holdings Inc. v. Giants Stadium LLC*,
No. 13-01554 (Bankr. S.D.N.Y. filed Oct. 23, 2013)..............................................11

*Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*,
502 B.R. 376 (Bankr. S.D.N.Y. 2013) ("*MTD Order*") .................................. passim

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
Holdings Inc.)*,
480 B.R. 179 (S.D.N.Y. 2012)................................................................... passim

*Lehman Bros. Holdings Inc. v. LCOR Alexandria L.L.C.*,
No. 13-01689 (Bankr. S.D.N.Y. filed Nov. 21, 2013)...........................................11

*Lehman Bros. Holdings Inc. v. United States*,
No. 10-06200 (RMB) (S.D.N.Y. Sept. 24, 2010) ...................................................8

*Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd.*,
No. 09-01032 (Bankr. S.D.N.Y. filed Feb. 3, 2009)..............................................11

*Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs., Ltd.*,
09-01242 (Bankr. S.D.N.Y. closed June 26, 2013) ...............................................11

*Lehman Bros. Special Fin. Inc. v. Fed. Home Loan Bank of Cincinnati*,
No. 13-01330 (Bankr. S.D.N.Y. filed Apr. 17, 2013) ...........................................11

*Lehman Bros. Special Fin. Inc. v. Metro. West Asset Mgmt., LLC*,
No. 09-01165 (Bankr. S.D.N.Y. closed June 29, 2010) .........................................11

*Libra CDO Ltd. v. Lehman Bros. Special Fin. Inc.*,
No. 09-01178 (Bankr. S.D.N.Y. closed Aug. 8, 2013)...........................................11

*McHale v. Citibank, N.A.*,
No. 09 Civ. 6064 (SAS), 2009 WL 2599749 (S.D.N.Y. Aug. 24, 2009) ...................... passim

*Mich. State Hous. Dev. Auth. v. Lehman Bros. Derivative Prods. Inc.*,
No. 09-01728 (Bankr. S.D.N.Y. filed Nov. 16, 2009)...........................................11

*Nisselson v. Salim (In re Big Apple Volkswagon, LLC)*,
No. 12 Civ. 92 (PGG), 2013 WL 1245548 (S.D.N.Y. Mar. 24, 2013).....................................7

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
4 F.3d 1095 (2d Cir. 1993)........................................................................ passim

*Prudential Global Funding LLC v. Lehman Bros. Holdings Inc.*,
No. 09-01423 (Bankr. S.D.N.Y. June 2, 2011 ......................................................11

## TABLE OF AUTHORITIES
### (CON'T)

**Page**

*Schneider v. Riddick III (In re Formica Corp.)*,
    305 B.R. 147 (2004) (Koeltl, J.) ....................................................................17, 23

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities. LLC*,
    486 B.R. 579 (S.D.N.Y. 2013)...........................................................................16

*Shugrue v. Blackwall Green Ltd. (In re Ionosphere Clubs, Inc.)*,
    No. 93 CIV. 1260 (CSH), 1994 WL 132236 (S.D.N.Y. Apr. 14, 1994) ...........17, 21

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011).......................................................................................6

*Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*,
    No. 09 Civ. 8851 (BSJ), 2009 WL 4496051 (S.D.N.Y. Dec. 3, 2009)..................7, 9, 17, 19

*Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*,
    No. 09-01535 (Bankr. S.D.N.Y. closed July 29, 2011) .........................................11

*Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., LP (In re Extended Stay, Inc.)*,
    466 B.R. 188 (S.D.N.Y. 2011)...........................................................................13, 15

### Statutes

28 U.S.C. § 157(d) .................................................................................................6, 22

28 U.S.C. § 1334(b) ...............................................................................................5

### Other Authorities

*In re Standing Order of Reference re:  Title 11*, No. 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012)....6, 24

Lehman Brothers OTC Derivatives, Inc. ("LOTC") and Lehman Brothers Holdings Inc. ("LBHI," and together with its debtor affiliates, "Lehman") respectfully submit this memorandum in opposition to Intel Corporation's motion for withdrawal of the reference.

## INTRODUCTION

This adversary proceeding concerns Intel's improper seizure of LOTC's collateral in connection with a Swap Agreement in the tumultuous days surrounding the Lehman bankruptcy. It is one of many derivatives-related disputes that the Bankruptcy Court has had and will have before it in connection with the Lehman bankruptcy—"the largest and, arguably, the most complex in United States history."  *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A., (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 185 (S.D.N.Y. 2012).

Given the extraordinarily complex factual and legal context of the Lehman bankruptcy, and the large number of disputes (including derivatives-related disputes) arising out of it, courts in this district have denied *every* motion that has been made for permissive withdrawals of the reference to the Bankruptcy Court in Lehman matters, based primarily on efficiency concerns, just as they had in the Enron bankruptcy.  Intel's motion should also be denied here, because as the Bankruptcy Court explained in its recent Order granting Intel's partial motion to dismiss in this case, "it is *most efficient* and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in" the Bankruptcy Court in the first instance.  *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, 502 B.R. 376, 383 (Bankr. S.D.N.Y. 2013) (emphasis added) ("*MTD Order*").   As the Bankruptcy Court well understands, the most efficient and effective way to resolve these many claims in an orderly manner is for them to be heard by the same court—one that, through presiding over the myriad Lehman disputes relating to swaps, rather than merely one assigned at random in the District Court, is best able to handle the issues raised by these cases in their full

context.  This is particularly true here, where the parties have waived a jury trial, and the Bankruptcy Court thus can completely adjudicate this matter, subject to district court review.

## BACKGROUND

### A.   PLAINTIFFS' CLAIM

LOTC and Intel entered into the Swap Agreement at issue in this action on August 1, 2008.[1]  Compl. ¶ 15.  Under the Agreement, Intel paid $1 billion to LOTC on August 29, 2008, and LOTC was required to deliver to Intel 50,552,943 shares of Intel common stock on September 29, 2008 (the "Settlement Date").  Compl. ¶¶ 16, 19, 36, 43.  The Swap Agreement also required LOTC to post, and LOTC did post, $1 billion of collateral on August 29, 2008.  Compl. ¶ 22.  The principal amount of LOTC's posted collateral remained at the fixed amount of $1 billion throughout the trade and, if the trade went to maturity, the collateral, along with any interest earned on it, was to be returned to LOTC on the Settlement Date upon delivery by LOTC of the shares called for by the agreement.  Compl. ¶ 23.

Pursuant to the Credit Support Annex, Intel had the right to set off against the collateral posted by LOTC any amounts payable by LOTC to Intel pursuant to the Swap Agreement.  Compl. ¶¶ 24-25.  However, the Credit Support Annex also made clear that Intel was not entitled to keep all of the $1 billion in collateral if the Agreement terminated before settlement.  Instead, it was necessary to determine the "amounts payable" to Intel, and the remainder of the collateral had to be returned to LOTC, after Intel exercised this set-off right.  Compl ¶ 26.

---

[1] The Swap Agreement is based on the 1992 Multicurrency—Cross Border ISDA Master Agreement and related documents, Compl. ¶ 15, Exs. 1-4, as were numerous other Lehman derivative agreements, including many that have given rise to adversary proceedings between Lehman and its counterparties before the Bankruptcy Court.  *See infra* Argument § II.A.1.

Because the Agreement designated LBHI as LOTC's Credit Support Provider, LBHI's bankruptcy filing on September 15, 2008 was an "Event of Default" under the Swap Agreement. Compl. ¶ 30.  Intel declared this Event of Default in a letter to LOTC dated September 26, 2008 and, in the same letter, demanded that LOTC deliver to Intel the 50,552,943 Intel shares due to it under the Agreement.  *Id.*  Although Intel had a right to declare a so-called "Early Termination Date" as a result of Lehman's bankruptcy on September 15, 2008, Intel did not do so on that day, nor in its September 26 letter.  Compl. ¶ 31.  Instead, Intel decided to ride out the market after LBHI's bankruptcy filing and waited a full two weeks, until September 29, 2008, before it declared an Early Termination Date based on LBHI's September 15 bankruptcy filing.  Compl. ¶ 37.

In its September 29 letter declaring the Early Termination Date, Intel acknowledged that the parties had elected "Second Method and Loss" to determine payments owed on an Event of Default.  *See id.*  However, in disregard of the requirements for calculating "Loss" set forth in the Master Agreement (*see* Compl. Ex. 1, Master Agreement § 14), Intel summarily concluded in its "Calculation of Loss," attached to its September 29 letter, that its "Loss" was $1,001,966,256.00. That is, Intel calculated its "Loss" for this transaction in an amount that was *exactly equal* to the principal amount of LOTC's posted collateral plus interest earned on that collateral, without any attempt to conduct a meaningful valuation of the trade as called for by the parties' agreement.

What Intel in fact did, of course, was simply seize all of LOTC's collateral and the interest accrued on it.  Intel purported to base its "Calculation of Loss" on the proposition that LOTC's obligation under the Swap Transaction was to deliver "$1 billion in Intel common stock." Compl. ¶ 39.  As the Complaint alleges, that is an improper calculation of "Loss" under the Swap Agreement.  The value of the 50,552,943 shares of Intel common stock that LOTC was to

deliver on the Settlement Date was $873 million, not $1 billion.  *Id.*  Alternatively, if Intel had

sought to replace this trade, it could have acquired the shares called for by the agreement for

approximately $688 million, in light of certain timing restrictions imposed on Intel in connection

with the purchase of its own securities.  Compl. ¶ 45.  In either case, Intel's "Loss" was far less

than $1 billion, yet Intel unlawfully seized the entire amount of LOTC's collateral.  Compl. ¶ 41.

The estate commenced this adversary proceeding to seek return of that portion of

LOTC's collateral that Intel has improperly seized, over and above Intel's loss.

### B.     OVERVIEW OF PROCEEDINGS IN THE BANKRUPTCY COURT

Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest

investment bank in the United States.  Lehman was party to thousands of derivative contracts,

including swap agreements, in which the contractual obligations and values are keyed to one or

more underlying assets or indices of asset values and subject to movements in the financial

markets.[2]  The Lehman claims register lists more than 80,000 proofs of claim, many of which are

derivatives claims or guarantee claims based on the 1992 Multicurrency—Cross Border ISDA

Master Agreement, as was the Swap Agreement here.

As detailed below, *infra* Argument § II.A.1, the Bankruptcy Court has heard dozens of

adversary complaints, motions, and other disputes regarding derivative transactions relating to

the Lehman bankruptcy.  Many more such disputes are currently pending.  And *hundreds* of

disputes involving derivatives transactions have moved and continue to move through the court-

---

[2] As of November 13, 2008, Lehman was party to approximately 930,000 derivative contract transactions of which approximately 733,000 are purported to have been terminated. Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts at 4, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 13, 2008) [Docket No. 1498].

ordered derivatives mediation process, and therefore, the Bankruptcy Court likely will have before it many more disputes of this nature if they cannot be resolved in mediation.

### C.   THE BANKRUPTCY COURT'S RULING ON INTEL'S MOTION TO DISMISS

This adversary proceeding was commenced on May 1, 2013, after which Intel moved to dismiss the bankruptcy law counts in the Complaint, and for a determination that Count I, alleging breach of the Swap Agreement, was "non-core," *i.e.*, not "arising under title 11" or "arising in" cases under title 11 within the meaning of 28 U.S.C. § 1334(b).  Intel did not contest, and has in fact conceded, that the Bankruptcy Court has jurisdiction over the breach of contract claim that remains in this case pursuant to § 1334(b) because it is "related to" the Lehman bankruptcy.[3]

Although the Bankruptcy Court determined that the breach of contract claim is "non-core," it nonetheless stated that this case should remain in Bankruptcy Court because "[r]egardless of whether a particular count is core or non-core, it is *most efficient* and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court."  *MTD Order*, 502 B.R. at 383 (emphasis added).  In order to remove the specter of forum shopping and "'gaming' of bankruptcy jurisdiction," the Bankruptcy Court invited Intel to "agree to an adjudication of this adversary proceeding in the

---

[3] See Transcript of Oral Argument at 140:13-14, *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, No. 13-01340 (Bankr. S.D.N.Y. Sept. 18, 2013) [Docket No. 28] ("MTD Hearing Tr.").  Copy attached as Exhibit 1 to the Declaration of Mahesh Venkatakrishnan Submitted in Support of Plaintiffs' Memorandum of Law in Opposition to Intel Corporation's Motion to Withdraw the Reference ("Venkatakrishnan Decl."), filed contemporaneously herewith.

Lehman bankruptcy court." *Id.* Intel disregarded the Bankruptcy Court's invitation when it filed

this motion to withdraw the reference on January 14, 2014.

## ARGUMENT

### I.     STANDARD FOR WITHDRAWAL OF THE REFERENCE

In this district, pursuant to Chief Judge Preska's 2012 Standing Order, all matters related

to bankruptcy proceedings, whether they are core or non-core, are automatically referred to the

Bankruptcy Court.  *See In re Standing Order of Reference re:  Title 11*, No. 12 Misc. 32

(S.D.N.Y. Jan. 31, 2012).  While these matters are heard by default in the Bankruptcy Court, a

district court may nonetheless withdraw a claim's reference from the Bankruptcy Court to the

District Court "for cause shown."  28 U.S.C. § 157(d).

The so-called "*Orion* factors" guide district courts considering motions to withdraw the

reference of a matter to the Bankruptcy Court, and whether a matter is core or non-core is only

one of several pertinent factors.  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re*

*Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993).  Among the *Orion* factors are "(1)

whether the claim or proceeding is core or non-core, (2) what is the most efficient use of judicial

resources, (3) what is the delay and what are the costs to the parties, (4) what will promote

uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other

related factors." *JPMorgan Chase Bank, N.A.*, 480 B.R. at 188 (alterations omitted).[4]  No single

factor is dispositive, but courts often find considerations of judicial economy to be "decisive."

---

[4] After the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the
first *Orion* factor no longer turns on "whether the claim is 'core' or 'non-core,' but rather [on]
whether the bankruptcy court has constitutional authority to enter a final judgment over the
claims at issue."  Mem. & Order at 3, *Lehman Bros. Holdings Inc. v. Ford Global Treasury, Inc.*
*(In re Lehman Bros. Holdings Inc.)* No. 12 Civ. 0820 (S.D.N.Y. Apr. 8, 2013) [Docket No. 7]
(Venkatakrishnan Decl. Ex. 2) ("*Ford Global*").

*See, e.g.*, *Nisselson v. Salim (In re Big Apple Volkswagon, LLC)*, No. 12 Civ. 92 (PGG), 2013 WL 1245548, at *5 (S.D.N.Y. Mar. 24, 2013); *see also Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*, No. 09 Civ. 8851 (BSJ), 2009 WL 4496051, at *2-3 (S.D.N.Y. Dec. 3, 2009).

## II.   THE REFERENCE SHOULD NOT BE WITHDRAWN

Courts in this district have consistently denied permissive motions to withdraw the reference of claims relating to the Lehman bankruptcy.  And for good reason:  the Bankruptcy Court is in the best position to efficiently hear actions relating to the bankruptcy and Lehman's extensive derivatives portfolio.  Intel does not, and cannot, dispute that Plaintiffs' claim here relates to the Lehman bankruptcy.  *See* MTD Hearing Tr. 140:13-14.  It should, therefore, remain in the Bankruptcy Court, as courts in this district have held in denying every other permissive motion to withdraw the reference in actions relating to the Lehman bankruptcy.

### A.   The *Orion* Factors Do Not Favor Withdrawing the Reference

#### 1.   Allowing the Bankruptcy Court to Retain Its Jurisdiction Will Promote Judicial Economy and Efficiency

In its Order on Intel's motion to dismiss, the Bankruptcy Court stated quite clearly the concern that warrants denial of Intel's motion to withdraw the reference.  The Bankruptcy Court explained that "[r]egardless of whether a particular count is core or non-core, it is *most efficient* and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court."  *MTD Order*, 502 B.R. at 383 (emphasis added).  The Bankruptcy Court well understands this concern.  After all, "[t]he Lehman bankruptcy is the largest and, arguably, the most complex in United States history."  *JPMorgan Chase Bank, N.A.*, 480 B.R. at 185.  Due to the extraordinary complexity of the Lehman bankruptcy and the number of the derivatives-related claims arising out of it, the most efficient and effective way to resolve these claims is for them to be heard by the same Bankruptcy

Court—one that, through presiding over the myriad Lehman adversary proceedings relating to derivatives rather than merely one such action, assigned at random to various judges in the District Court, is able to understand and appreciate the issues raised in their full context.

District courts in this district have thus uniformly denied permissive motions to withdraw Lehman-bankruptcy-related cases from the Bankruptcy Court on at least six occasions.[5]  They have reasoned that "the bankruptcy court's involvement with not only this proceeding but also with the administration of the entire Lehman bankruptcy . . . has been . . . extensive," *id.* at 196 (Sullivan, J.), and that the Bankruptcy Court's present and ever-growing familiarity with the "myriad financial transactions involved in the Lehman bankruptcy . . . promotes efficiency." Transcript of Oral Argument at 62:10-14, *Mich. State Hous. Dev. Auth. v. Lehman Bros.*

---

[5] As Judge Peck said in October 2013, "in the history of this bankruptcy case, to my knowledge, there has never been a [non-consensual, permissive] withdrawal of the reference, despite various efforts to achieve that over the last five years."  Transcript of Oral Argument at 21:20-23, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Oct. 24, 2013) [Docket No. 41337] (Venkatakrishnan Decl. Ex. 3).  The only decisions granting a motion to withdraw the reference in a Lehman bankruptcy-related matter have been on a *mandatory* basis—not at issue here—rather than the permissive withdrawal "for cause" sought by Intel on this motion.  *See* Intel Br. at 5.  In *In re Lehman Bros. Holding Inc.*, 13 Civ. 07481 (LGS), 2013 WL 6633431 (S.D.N.Y. Dec. 17, 2013) (Schofield, J.), the court granted a motion for a *mandatory* withdrawal of the reference for cases requiring "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statute." *Id.* at *2 (internal quotation marks omitted).  This provision is not at issue in the instant case and motion for *permissive* withdrawal, and Intel does not argue otherwise.  *See* Intel Br. at 2-12.  Moreover, Judge Schofield ultimately referred the matter to the Bankruptcy Court so it could issue a report and recommendation, since "an understanding of the context is also important," and "[r]eferring for a Report and Recommendation will provide that context."  *In re Lehman Bros. Holding Inc.*, 2013 WL 6633431, at *3.  Similarly, in *Lehman Bros. Holdings Inc. v. United States*, No. 10-06200 (RMB) (S.D.N.Y. Sept. 24, 2010), Lehman did not oppose the government's motion for *mandatory* withdrawal because it argued that the tax-refund case at issue there would require significant interpretation of non-bankruptcy federal laws.  *See* Letter to the Court from United States Attorney Preet Bharara at 1-2, *Lehman Bros. Holdings Inc. v. United States,* No. 10-06200 (RMB) (S.D.N.Y. Sept. 24, 2010) [Docket No. 12] (Venkatakrishnan Decl. Ex. 4).  And in that case, the parties agreed that the Bankruptcy Court would supervise discovery because it was "familiar with the Lehman bankruptcy in general."  *Id.* at 2.

*Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, No. 11 Civ. 03392 (JGK) (S.D.N.Y. Sept. 14, 2011) (Koeltl, J.) [Docket No. 14] (Venkatakrishnan Decl. Ex. 5) ("*MSHDA*").

A number of these decisions have, like this case, related to Lehman swaps and derivative agreements.  In those cases, courts have stressed the efficiency to be gained from having these claims adjudicated in the Bankruptcy Court.  As Judge Jones observed in denying a motion to withdraw the reference in one such case, the Bankruptcy Court's overview of Lehman's business and swap transactions in general makes it the more appropriate forum in which to adjudicate disputes concerning swaps in the first instance:

> The Bankruptcy Court is in the process of adjudicating numerous disputes between [Lehman affiliate Lehman Brothers Special Financing Inc. ("LBSF")] and various other counterparties concerning interest rate swap transactions, and has developed expertise with respect to this complex form of contract.  These disputes do not focus solely around issues of New York state law, but also upon the materiality of terms in derivative transactions and industry practice.  Thus, the Bankruptcy Court may be best equipped to adjudicate the present dispute due to its exposure to LBSF's business, the contract terms at issue here, the complex type of transaction at issue here, and the practices of the swap industry.

*Veyance Techs., Inc.*, 2009 WL 4496051 at *2 (footnotes omitted).

Judge Abrams similarly denied a motion to withdraw the reference principally on efficiency grounds because the Bankruptcy Court is handling many Lehman swaps cases, and would soon be handling many more (as it is now):

> Given the size and complexity of the Lehman bankruptcy, the bankruptcy court's familiarity with the underlying facts of the Lehman bankruptcy, including its derivatives portfolio, as well as its expertise in bankruptcy law, a consideration of efficiency weighs against withdrawing the reference at this time. This is particularly true given Plaintiffs' representation that "scores of disputes involving derivative transactions are currently being mediated by Bankruptcy Court order, and those mediations that fail . . . will end up as adversary proceedings in the bankruptcy court."

*Ford Global* at 5 (citations omitted).

And Judge Swain ruled similarly, stating that

> [It] is of no surprise to this Court that these types of instruments and the many different contracts that are involved in their existence and administration of the rights thereunder will be significant issues within the context of the bankruptcy proceeding of the Lehman entities as a whole, and the bankruptcy court has become and will necessarily become more knowledgeable of the intricacies of these arrangements and their relationship to the estate.

Transcript of Oral Argument at 32-33, *Wong v. HSBC USA Inc. (In re Lehman Bros. Holdings Inc.)*, No. 09 Civ. 06841 (LTS) (S.D.N.Y. Oct. 14, 2009) [Docket No. 23] (Venkatakrishnan Decl. Ex. 6) ("*Wong*"); *see also* Mem. Order at 8-9, *Lehman Bros. Holdings Inc. v. Crédit Agricole Corp. & Inv. Bank (In re Lehman Bros. Holdings Inc.)*, No. 13 Civ. 03373 (LTS) (S.D.N.Y. Aug. 8, 2013) (Swain, J.) [Docket No. 11] (Venkatakrishnan Decl. Ex. 7) (denying motion to withdraw the reference in Lehman swap-related adversary proceeding based on "efficiency concerns").

These rulings have all recognized that the adjudication of the large number of derivatives-based claims (including swap-based claims) related to the Lehman bankruptcy will be best handled by having all such claims before the Bankruptcy Court in the first instance. And they mirror similar decisions in prior large bankruptcy cases, such as the Enron bankruptcy. In large bankruptcies presenting complex factual and legal issues, considerations of judicial economy strongly favor concentrating debtor-related adversary proceedings before a single Bankruptcy Court that will develop expertise in handling such cases.[6]

---

[6] *See, e.g.*, *Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.)*, No. 01 Civ. 7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 08, 2003) ("[B]ecause Judge Gonzalez is dealing with a number of cases involving analogous claims and issues, the most efficient use of judicial resources would be to keep this case before Judge Gonzalez in the Bankruptcy Court . . . ."); *California v. Enron Corp.*, No. 05 Civ. 4079 (GBD), 2005 WL 1185804, at *3 (S.D.N.Y. May 18, 2005) ("The Bankruptcy Court is more thoroughly familiar with the Debtors claims and issues in the instant matter and all of the other Enron-related cases."); *id.* at *3 n.2 (collecting cases denying motions to withdraw the reference in Enron cases

Indeed, it is likely that the Bankruptcy Court will continue to preside over many adversary proceedings involving Lehman derivatives, including swap agreements. Prior to its bankruptcy, Lehman was party to thousands of derivative contracts, including swap agreements such as the one at issue here.[7] The Bankruptcy Court has already adjudicated many disputes between Lehman and other parties in matters concerning derivatives contracts.[8] Many other such matters are currently pending.[9] And there will be even more such matters. Hundreds of disputes

_____

(continued…)

and noting that "no court in this district has granted a motion to withdraw the reference" in an Enron case, aside from one case granting a mandatory withdrawal).

[7] The Lehman claims register lists more than 80,000 proofs of claim, many of which are derivatives claims or guarantee claims based on the 1992 Multicurrency—Cross Border ISDA Master Agreement. *See also supra* note 2.

[8] An illustrative, but by no means comprehensive list of Lehman derivatives-related matters that the Bankruptcy Court has heard includes: *Libra CDO Ltd. v. Lehman Bros. Special Fin. Inc.*, No. 09-01178 (Bankr. S.D.N.Y. closed Aug. 8, 2013); *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs., Ltd.*, 09-01242 (Bankr. S.D.N.Y. closed June 26, 2013); *Veyance Technologies, Inc. v. Lehman Bros. Special Fin. Inc.*, No. 09-01535 (Bankr. S.D.N.Y. closed July 29, 2011); *Prudential Global Funding LLC v. Lehman Bros. Holdings Inc.*, No. 09-01423 (Bankr. S.D.N.Y. June 2, 2011) [Docket No. 41] (entry of so ordered stipulation of dismissal with prejudice); *Fed. Home Loan Bank of Pittsburgh v. Lehman Bros. Holdings Inc.*, No. 09-01393 (Bankr. S.D.N.Y. closed May 3, 2011); *Lehman Bros. Special Fin. Inc. v. Metro. West Asset Mgmt., LLC*, No. 09-01165 (Bankr. S.D.N.Y. closed June 29, 2010); and *Bd. of Educ. of Chicago v. Lehman Bros. Special Fin. Inc.*, No. 09-01455 (Bankr. S.D.N.Y. closed Feb. 4, 2010) [Docket No. 15] (entry of so ordered stipulation of dismissal with prejudice).

[9] Pending Lehman derivatives-related adversary proceedings include: *Lehman Bros. Holdings Inc. v. LCOR Alexandria L.L.C.*, No. 13-01689 (Bankr. S.D.N.Y. filed Nov. 21, 2013); *Lehman Bros. Holdings Inc. v. Giants Stadium LLC*, No. 13-01554 (Bankr. S.D.N.Y. filed Oct. 23, 2013); *Lehman Bros. Special Fin. Inc. v. Fed. Home Loan Bank of Cincinnati*, No. 13-01330 (Bankr. S.D.N.Y. filed Apr. 17, 2013) (motion to withdraw the reference pending); *Lehman Bros. Holdings, Inc. v. Ford Global Treasury, Inc.*, No. 12-01877 (Bankr. S.D.N.Y. filed Sept. 18, 2012) (order of district court denying motion to withdraw the reference entered on Apr. 8, 2013); *Mich. State Hous. Dev. Auth. v. Lehman Bros. Derivative Prods. Inc.*, No. 09-01728 (Bankr. S.D.N.Y. filed Nov. 16, 2009) (order of district court denying motion to withdraw the reference entered on Sept. 19, 2011); *Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd.*, No. 09-01032 (Bankr. S.D.N.Y. filed Feb. 3, 2009).

involving derivatives agreements have moved and are currently moving through the court-ordered derivatives mediation process and, therefore, the Bankruptcy Court likely will hear many more disputes of this nature if the pending disputes cannot be resolved in mediation.[10]  As Judge Abrams recently recognized, "scores of disputes involving derivative transactions are currently being mediated by Bankruptcy Court order, and those mediations that fail . . . will end up as adversary proceedings in the bankruptcy court." *Ford Global* at 5 (internal quotation marks omitted).  Thus, Judge Abrams reasoned that it was "particularly true" that "consideration[s] of efficiency weigh[] against withdrawing the reference," since the Bankruptcy Court is likely to hear many more complex, yet similar claims concerning Lehman derivatives in the future.  *Id.*

    Intel contends that the efficiency gains from having the Bankruptcy Court hear this claim are now "lost" because Judge Peck has stepped down.  But the retirement of the individual judicial officer presiding over the Lehman bankruptcy does not change the overwhelmingly strong efficiency rationales for having this case heard together with all the other Lehman swap-related adversary proceedings in the Bankruptcy Court in the first instance.  Judge Peck knew that he was retiring, yet he nonetheless emphasized in his recent Order that "it is *most efficient* and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in" Bankruptcy Court.  *MTD Order*, 502 B.R. at 383 (emphasis added).  Moreover, Judge Peck's retirement will by no means end the stream of cases

_____

    [10] As described in a recent letter to the Bankruptcy Court, at least 448 ADR Notices have been served to date in the *In re Lehman Brothers Holdings Inc.* bankruptcy matter.  *See* Letter from Peter Gruenberger to Honorable James M. Peck, Re:  ADR Procedures Order Dated 9/17/09 Fiftieth Status Report, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 29, 2014) [Docket No. 42337] (Venkatakrishnan Decl. Ex. 8).  Furthermore, while settlements have been reached in certain ADR matters, LBHI continues to serve additional notices for mediation and, to the extent no resolution is reached in mediation, those disputes will be brought before the Bankruptcy Court.  *See id.*

like this in the Bankruptcy Court; many are now pending there, and potentially hundreds more are coming.  The bankruptcy judge that takes over for Judge Peck will, just as Judge Peck did at the outset of the Lehman bankruptcy case in 2008, develop extensive expertise in the complex factual and legal issues surrounding the Lehman bankruptcy in general, and Lehman derivative- and swap-related claims in particular.  As Judge Swain recognized in refusing to withdraw the reference in a Lehman adversary proceeding, "the bankruptcy court has become *and will necessarily become more knowledgeable* of the intricacies of these arrangements and their relationship to the estate," given the large number of Lehman derivative- and swap-related claims.  *Wong* at 32-33 (emphasis added).[11]

Thus, the Bankruptcy Court, as an institution, will bring to this case the benefit of the full context provided by exposure to the large number of claims and issues arising out of the Lehman bankruptcy, and the large number of Lehman derivatives-related claims in particular.  Only the Bankruptcy Court, regardless of which particular individual judicial officer is presiding, will have this broad context to inform its ruling on this adversary proceeding not as a one-off, isolated breach of contract claim, but as one part of the much larger series of disputes between Lehman affiliates and swap counterparties arising out of the tumultuous days surrounding Lehman's September 2008 bankruptcy—"the largest and, arguably, the most complex in United States history."  *JPMorgan Chase Bank, N.A.*, 480 B.R. at 185.  An understanding of this context is crucial to determining whether a party's actions in the days surrounding Lehman's bankruptcy were reasonable or unreasonable, legal or illegal, and this context may prove particularly

---

[11] *See also Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., LP (In re Extended Stay, Inc.)*, 466 B.R. 188, 207 (S.D.N.Y. 2011) ("Judicial economy favors adjudicating all of the [similar actions arising out of the same bankruptcy] in the bankruptcy court and then permitting review by this Court, if necessary.").

important in this case, in which the Complaint alleges "Intel did not reasonably, or in good faith, determine its losses in accordance with the swap agreement," pursuant to an Early Termination Date that Intel declared as a consequence of the LBHI bankruptcy filing.  Compl. ¶ 6.  *See In re Lehman Bros. Holding Inc.*, 2013 WL 6633431, at *3 ("[A]n understanding of the context is also important," and "[r]eferring for a Report and Recommendation will provide that context.").

Intel's argument that Judge Peck's retirement negates the overwhelming efficiency interests of having this case heard by the Bankruptcy Court would, if accepted, lead to great inefficiencies in this case and the many others like it.  First, as noted above, this is only one of a number of such cases that the new judge presiding over the Lehman bankruptcy will have on the docket of adversary matters.  Second, as cases in this district have repeatedly emphasized in denying motions to withdraw the reference in Lehman adversary proceedings, the interests of judicial economy have been served mightily by having all claims arising out of and related to the biggest bankruptcy in U.S. history heard by the same Bankruptcy Court in the first instance.  *See, e.g.*, *JPMorgan Chase Bank, N.A.*, 480 B.R. at 195-96 ("[C]onsiderations of judicial economy and efficiency weigh strongly against withdrawal.").  Indeed, if Intel's arguments were credited in every case where they could be made, the retirement and succession of a judge in the Bankruptcy Court would cause a sea change in every large bankruptcy matter, and eliminate the court's institutional experience, ignoring its ongoing docket.  In such a scenario, whether a case would remain in or be removed from the Bankruptcy Court would turn on the idiosyncratic facts of when it was filed and, more particularly, whether it could be determined before a particular judge assigned to the bankruptcy proceedings stepped down.

Intel does not grapple with any of these institutional concerns in its motion.  Rather, it argues that the time it will take the District Court to review the Bankruptcy Court's report and

recommendation *de novo* might lead to delay.  That concern has no basis in fact.  There is

already a scheduling order in place addressing pretrial discovery and preparation of the case, and

the parties are following it.  The case is not stagnant.  Moreover, even if it had a factual basis,

courts have repeatedly recognized that, in the end, much more time and effort is saved by having

the input of the Bankruptcy Court that is handling and will be handling the numerous claims

arising out of the same complex factual and legal context of a large bankruptcy.[12]  Indeed, Chief

Judge Preska's standing order automatically referring all cases relating to a bankruptcy to the

Bankruptcy Court is premised on the idea that judicial economy is best served by leaving such

matters in the first instance with the Bankruptcy Court, and district court review of the

Bankruptcy Court's rulings in both core and non-core proceedings is routine.  *See Walker,*

*Truesdell, Roth & Assocs.*, 466 B.R. at 206-07 (denying motion for permissive withdraw because

"the bankruptcy court's proposed findings of fact and conclusions of law will narrow the issues

to be resolved by this Court").[13]

---

[12] *See, e.g.*, *Ford Global* at 5 (citing *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) ("[E]xperience strongly suggests that having the benefit of a report and recommendation will save the district court and the parties an immense amount of time.")); *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7340, 2010 WL 4910119, at *3-4 (S.D.N.Y. Nov. 22, 2010) (where the Bankruptcy Court was "generally familiar" with the "complex Madoff factual context," *inter alia*, "[d]efendants' contention that this Court must conduct a *de novo* review of the bankruptcy court's determination is not dispositive in light of the other efficiency and uniformity factors involved in this case").

[13] None of Intel's cited cases regarding efficiency involved large bankruptcies on the scale of Lehman or Enron, in which a multitude of complex, yet similar claims would be presented to the bankruptcy court and in which all parties could greatly benefit from its acquired expertise.  *See Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012); *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 205 (E.D.N.Y. 2013); *In re Lenders Abstract & Settlement Serv., Inc.*, 493 B.R. 385, 397 (E.D.N.Y. 2013).  In *Development Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Brothers)*, the court also recognized that the adversary proceeding before it was "*sui generis*" and turned entirely on the interpretation of a single contract.  No. 11 Civ. 4949 (PAE), 2011 WL 7678683, at *6 (S.D.N.Y.

In sum, the strong efficiency gains from the Bankruptcy Court adjudicating all Lehman adversary proceedings concerning swaps, along with the other factors discussed below, weigh heavily in favor of denying Intel's motion to withdraw the reference here.

### 2. The Non-Core Nature of LOTC's Claim Does Not Trump the Efficiency Concerns for Maintaining the Reference Here

Intel makes much of the Bankruptcy Court's ruling that LOTC's claim is non-core, while simultaneously attempting to downplay the Bankruptcy Court's astute judgment in the very same Order that LOTC's claim should be heard by the Bankruptcy Court. *MTD Order*, 502 B.R. at 383.   In addition, the core/non-core distinction is one of several *Orion* factors.  The courts have described it as a "mere factor," *Enron Power Mktg., Inc.*, 2003 WL 68036, at *6, that is certainly "not singularly dispositive," *In re Fairfield Sentry Ltd.*, 2010 WL 4910119, at *2, and which does not trump strong efficiency reasons for denying a motion to withdraw the reference.

Courts have thus repeatedly denied motions to withdraw the reference in cases involving non-core claims.  For example, in the analogous context of a non-core adversary proceeding arising out of the large Enron bankruptcy that involved the same master agreement at issue in other Enron adversary proceedings, Judge Baer reasoned that his decision "need not and does not rest on the core/non-core distinction," and since the Bankruptcy Court was "dealing with a number of cases involving analogous claims and issues, the most efficient use of judicial resources would be to keep this case before . . . the Bankruptcy Court." *Enron Power Mktg., Inc.*,

---

(continued…)

Nov. 23, 2011).  And in *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, 486 B.R. 579 (S.D.N.Y. 2013), the court granted a *mandatory* withdrawal, and only granted a permissive withdrawal in the alternative where the adversary proceeding was closely related to a large case that had been pending before the district court for nearly four years and with which the district court was "intimately familiar." *Id.* at 584.

-16-

2003 WL 68036, at *10.[14]

Indeed, underscoring the relative unimportance of this single *Orion* factor in the face of strong efficiency gains, courts have declined to decide whether claims were core or non-core in decisions that denied motions to withdraw the reference based on efficiency concerns.  For example, in denying a motion to withdraw the reference for a Lehman adversary proceeding involving a swap agreement, Judge Jones bypassed the question of whether the claims were core or non-core, reasoning that "the interests of judicial efficiency may dictate that the case should remain in Bankruptcy Court, whether the Adversary Proceeding is core or non-core."  *Veyance Techs., Inc.*, 2009 WL 4496051, at *2.  And Judge Swain similarly declined to decide whether the claims in the Lehman adversary case before her were core, instead denying the motion on efficiency grounds.  *Wong* at 31-33.  *See also, e.g.*, *In re Fairfield Sentry Ltd.*, 2010 WL 4910119, at *2-3 ("The Court thus moves to the other relevant factors without reaching a conclusion on [the core/non-core determination], which is not singularly dispositive," given that "judicial economy" is "promote[d] significantly" by the Bankruptcy Court's familiarity with "the complex Madoff factual context").[15]

---

[14] *See also, e.g.*, *McHale v. Citibank, N.A.*, No. 09 Civ. 6064 (SAS), 2009 WL 2599749, at *8 (S.D.N.Y. Aug. 24, 2009) (denying motion to withdraw the reference over non-core adversary proceeding); *Schneider v. Riddick III (In re Formica Corp.)*, 305 B.R. 147, 150-52 (2004) (Koeltl, J.) (same); *Shugrue v. Blackwall Green Ltd. (In re Ionosphere Clubs, Inc.)*, No. 93 CIV. 1260 (CSH), 1994 WL 132236, at *3 (S.D.N.Y. Apr. 14, 1994) (denying motion to withdraw the reference for non-core claims based on "efficiency" interests); *Hassett v. Citicorp N.A., Inc. (In re CIS Corp.)*, No. 92 Civ. 1325 (CSH), 1994 WL 524987, at *2-3 (S.D.N.Y. Sept. 27, 1994) (denying motion to withdraw reference for "essentially non-core . . . proceeding" for reasons of "[j]udicial efficiency").

[15] Even when denying a motion to withdraw a Lehman adversary proceeding presenting core claims as to which the Bankruptcy Court could constitutionally enter final judgment, this Court emphasized that considerations of judicial economy, not the core nature of the claims presented, are what necessitated denying the motion.  *See MSHDA* at 62:4-9 ("Regardless of

-17-

Moreover, after the Supreme Court's ruling in *Stern v. Marshall*, "the principal question as to [this] *Orion* factor is no longer whether the claim is 'core' or 'non-core' but rather whether the bankruptcy court has constitutional authority to enter a final judgment over the claims at issue." *Ford Global* at 3.  After *Stern*, for both non-core claims and for statutorily core claims that are outside the Bankruptcy Court's constitutional authority to enter final judgment, the Bankruptcy Court must submit a report and recommendation to the District Court.  *See id.* at 5. And in several recent cases, courts that have found that the Bankruptcy Court could not enter final judgment over a Lehman adversary proceeding under *Stern* have nonetheless denied motions to withdraw the reference based on the strong efficiency gains from having the Bankruptcy Court hear the claims and frame the issues in the first instance.  *See id.* ("Notwithstanding th[e] conclusion [that the Bankruptcy Court may not enter final judgment under *Stern*], the remaining *Orion* factors weigh in favor of denying Defendant's motion to withdraw the reference at this time."); *JPMorgan Chase Bank, N.A.*, 480 B.R. at 192-93, 195-96 (denying motion to withdraw the reference over Lehman adversary proceeding because "considerations of judicial economy and efficiency weigh strongly against withdrawal," even though "the bankruptcy court lacks constitutional authority to finally adjudicate at least the majority of Plaintiffs' claims").  As these cases show, even where the Bankruptcy Court lacks authority to enter a final judgment, the strong efficiency rationales for keeping Lehman adversary proceedings before the Bankruptcy Court in the first instance are decisive.

---

(continued…)

whether this proceeding is core or noncore, . . . concerns of efficiency, judicial economy, and the uniform administration of bankruptcy law weigh strongly against withdrawing the reference here.").

Consistent with all of this prior practice, the Bankruptcy Court in this case recognized that, "*[r]egardless of whether a particular count is core or non-core*, it is *most efficient* and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court."  *MTD Order*, 502 B.R. at 383 (emphasis added).

### 3.  The Parties' Jury Waiver Strongly Supports Allowing the Bankruptcy Court to Retain Its Jurisdiction

Another consideration under *Orion* is whether a jury trial is likely—and the lack of a jury trial demand supports leaving the case with the Bankruptcy Court.  Here, where the parties have agreed to a jury waiver and there is no possibility of a jury trial, this factor weighs very strongly in favor of denying Intel's motion.

Because a Bankruptcy Court cannot conduct a jury trial for non-core claims, *McHale*, 2009 WL 2599749, at *4, the reference in such a case has to be withdrawn if and when the case is ready to be tried by a jury in the district court.  But even when a jury trial is eventually *possible*, courts nonetheless frequently decline to withdraw the reference until trial is imminent, so that the Bankruptcy Court can efficiently handle pretrial matters.  *See, e.g.*, *Enron Power Mktg., Inc.*, 2003 WL 68036, at *11 ("Judge Gonzalez, who is presiding over twelve other cases brought by plaintiff and/or one of its affiliates and all of which involve similar issues, is familiar with the salient issues in all the cases and is far more able to supervise all of them together, *unless and until a jury trial is necessary*.") (emphasis added).  Indeed, for this reason courts have denied motions to withdraw the reference in Lehman adversary proceedings despite the possibility of an eventual jury trial.  *See, e.g.*, *JPMorgan Chase Bank, N.A.*, 480 B.R. at 194 (denying motion to withdraw the reference because, *inter alia*, "it is possible that Plaintiffs' claims may be resolved before the matter is ripe for a trial before a jury") (internal quotation marks omitted); *Veyance Techs. Inc.*, 2009 WL 4496051, at *2 n.3 (finding that a "demand of a

jury trial" does not "weigh[] strongly in favor of withdrawal of the reference" because "[e]ven if this action is a non-core proceeding, the Bankruptcy Court may still adjudicate pretrial matters") (internal quotation marks omitted).

Here, as Intel admits in a footnote, *there will be no jury trial* on LOTC's remaining claim because "the parties agreed to a jury waiver."  Intel Br. at 11 n.4 (citing Compl. Ex. 2 § 5(k)).[16] *A fortiori*, this *Orion* factor weighs even more strongly in favor of denying the motion.  Where, as here, it is certain that no jury trial will be held, the Bankruptcy Court can provide "complete adjudication of a matter," subject to review by the district court, and the reference will not need to be withdrawn if trial becomes imminent.  *McHale*, 2009 WL 2599749, at *4.

Similarly, Intel's argument that the claims asserted in the Complaint are legal rather than equitable is beside the point here, given the parties' jury waiver.  The inquiry as to whether a claim is legal or equitable in nature under this *Orion* factor is part of determining whether the parties are entitled to a jury trial, at which point the matter would have to proceed to the District Court.  *See McHale*, 2009 WL 2599749, at *4 ("Whether a dispute is legal or equitable in nature *and consequently* whether the litigants are afforded the right to a jury trial is" considered because a Bankruptcy Court cannot conduct a jury trial in a non-core case, and thus cannot "provide complete adjudication" in a non-core case with a jury demand) (emphasis added).  But that is an unnecessary inquiry here, because, as Intel acknowledges, there will be no jury trial on LOTC's claim and the Bankruptcy Court can thus "provide complete adjudication" of this matter by conducting a bench trial if necessary, subject to district court review.  *Id.*

---

[16] The Swap Agreement states:  "<u>Waiver of Trial by Jury</u>.  Each party waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any Proceedings relating to this Agreement, any Transaction, or any Credit Support Document."  Compl. Ex. 2 § 5(k).

### 4.    Allowing the Bankruptcy Court to Retain Its Jurisdiction Will Promote Uniformity

Courts also consider the interest in "uniformity of bankruptcy administration" in determining whether to withdraw a reference to the Bankruptcy Court. *Enron Power Mktg., Inc.*, 2003 WL 68036, at *6. In large bankruptcies presenting many complex factual and legal issues, courts have determined that the strong efficiencies to be gained by the Bankruptcy Court adjudicating the many factually and legally related claims arising out of those bankruptcies also serves the interests of uniformity, even when those claims are non-core.

For instance, in an adversary proceeding arising out of the Enron bankruptcy, even though Judge Baer determined that the claims presented were "essentially contract claims" and non-core, he ruled that both efficiency and uniformity warranted keeping the matter before the Bankruptcy Court, which was and would be hearing many similar claims arising out of the same master agreement. *See id.* at *9-10 ("I must also consider other factors, such as the most efficient use of judicial resources, the uniformity of the administration of the bankruptcy laws, and delay and costs to the parties. Here, I find that the evidence weighs overwhelmingly in plaintiff's favor. . . . [B]ecause Judge Gonzalez is dealing with a number of cases involving analogous claims and issues, the most efficient use of judicial resources would be to keep this case before Judge Gonzalez in the Bankruptcy Court . . . ."). As discussed above, similarly strong efficiency interests are present here, and the interest of uniformity will be best served by having the Bankruptcy Court adjudicate the many similar Lehman adversary proceedings concerning swaps that are currently pending and that will be brought in the future.[17]

---

[17] Nor is the fact that the claims are based on New York law dispositive. *See Shugrue*, 1994 WL 132236, at *1, *3-4 (even though a non-core adversary proceeding presenting common law claims was determined to be "not a turnover proceeding," the court nonetheless found that

Even those courts that have taken a narrower view of this *Orion* factor, such that the only relevant uniformity is the administration of bankruptcy-law claims, have nonetheless relied on strong efficiency rationales to deny motions to withdraw the reference in cases presenting non-core claims.  Thus, Judge Scheindlin ruled that, even though the non-core proceeding before her did "not turn on any bankruptcy laws," the uniformity factor was merely "neutral" and did nothing to detract from the fact that the other "*Orion* factors, on balance, weigh in favor of maintaining the proceeding in the bankruptcy court."  *McHale*, 2009 WL 2599749, at *8.  The same rationale applies here, given the strength of the efficiency gains to be had from concentrating all Lehman adversary proceedings, and especially all those involving swaps, before the Bankruptcy Court.[18]

### 5.   Allowing the Bankruptcy Court to Retain Jurisdiction Will Prevent Forum Shopping

Finally, courts consider whether the party moving to withdraw the reference is attempting to forum shop.  Courts in this district construe § 157(d) "to prevent an 'escape hatch' out of bankruptcy court."  *In re Fairfield Sentry, Ltd.*, 2010 WL 4910119, at *4 (citing *Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*, 2004 WL 2149124, at *5 (S.D.N.Y. Sept. 23, 2004)).  "[C]ourts should employ withdrawal judiciously in order to prevent it from becoming

---

(continued…)

"[j]udicial efficiency *and uniformity* will be promoted by allowing the bankruptcy court, already familiar with the underlying action, to manage the proceedings until the case becomes ready for trial") (emphasis added).

[18] Moreover, due to the many Lehman adversary proceedings relating to derivatives that will be heard by the Bankruptcy Court, many of which involve the same form master agreement as in this case, the experience gained by the Bankruptcy Court will promote uniformity with other adversary proceedings presenting similar issues, some of which may be core proceedings.

just another litigation tactic for parties eager to find a way out of bankruptcy court." *Schneider*, 305 B.R. at 151 (internal quotation marks omitted).

Here, the Bankruptcy Court smelled forum shopping by Intel, stating that "the Court has a concern about the 'gaming' of bankruptcy jurisdiction that is evident . . . in Intel's motion to dismiss." *MTD Order*, 502 B.R. at 383.[19]   The Bankruptcy Court was referring to Intel's apparent strategy of moving to dismiss the turnover and automatic stay counts (but not the other count in the Complaint) in an attempt to shore up its position for an eventual motion to withdraw the reference.  *Id.* at 379, 383.  While granting Intel's motion, the Bankruptcy Court nevertheless proposed that Intel agree to keep this case before the Bankruptcy Court to further the strong efficiency interests in having the Bankruptcy Court handle all disputes involving swap agreements where Lehman or its affiliates are parties.[20]  *Id.* at 383.

Intel's conduct in persisting with this motion notwithstanding the efficiency concerns flagged by the Bankruptcy Court reflects that Intel believes it will have the greatest chance of success if this matter is heard not by the Bankruptcy Court, which has many other Lehman derivatives- and swaps-related disputes before it, but by a District Court judge hearing this matter as an isolated dispute.  But the Bankruptcy Court will have the fullest grasp of the relevant context of this case, and this context is especially crucial here, where the Complaint alleges that "Intel did not reasonably, or in good faith, determine its losses in accordance with the swap agreement," in the wake of an Event of Default declared because of LBHI's bankruptcy

---

[19] Indeed, one of the very first questions put to Intel by Judge Peck at the September 18, 2013 hearing was "[t]his is forum shopping, isn't it?"  MTD Hearing Tr. 139:17.

[20] Intel's speculation about whether the Supreme Court will hold that consensual final judgments entered by the Bankruptcy Court are unconstitutional in certain cases, Intel Br. at 8-9 & n.3 is beside the point.  Here, Intel need only to consent to the Bankruptcy Court issuing a report and recommendation to take advantage of the efficiency gains highlighted by Judge Peck.

filing.  Compl. ¶ 6.  To the extent this is Intel's strategy, such an attempt to wrench this claim

from being heard by the Court that has the full context of such swaps- and bankruptcy-related

disputes should not be countenanced.

Regardless, even assuming Intel is not engaged in forum shopping, this would not

outweigh the strong efficiency rationales for denying Intel's motion, as courts denying motions

to withdraw Lehman adversary proceedings have previously determined.[21]  Moreover, Intel's

suggestion that LOTC was engaged in forum shopping by asserting turnover and automatic stay

violation claims—claims that the Bankruptcy Court stated it would have upheld had Intel

improperly withheld LOTC's collateral only days later, post-petition, *see MTD Order*, 502 B.R.

at 381 n.2—is wrong.  Under Judge Preska's standing order, this action was automatically

referred to Bankruptcy Court *regardless* of whether LOTC asserted the turnover and automatic

stay violation claims and, indeed, could not be brought in the District Court under the terms of

that order.  *See In re Standing Order of Reference re:  Title 11*, No. 12 Misc. 32 (S.D.N.Y. Jan.

31, 2012) (providing that any case or proceeding "related to a case under title 11" shall be

automatically referred to the Bankruptcy Court).  This case is plainly related to the LOTC and

LBHI bankruptcy cases, as Intel has conceded (*see* MTD Hearing Tr. 140:13-14).  It is a dispute

in which the bankruptcy of LOTC's parent and credit support provider, LBHI, was the trigger for

Intel's improper seizure of LOTC's collateral, which took place shortly before LOTC's own

bankruptcy.  *See* Compl. ¶¶ 1-8, 12.  And the Bankruptcy Court so held, stating that "[t]he

---

[21] *See Ford Global* at 6 (denying motion to withdraw the reference based on "concerns about judicial economy" even where there was no forum shopping); *JPMorgan Chase Bank, N.A.*, 480 B.R. at 197 (denying motion to withdraw the reference based on concern for "judicial economy" even though "[i]t is difficult to speculate as to JPMC's motives, particularly given that Judge Peck granted its motion to dismiss as to many of Plaintiffs' claims").

breach of contract count . . . *unquestionably* is related to the Lehman chapter 11 cases." *MTD Order*, 502 B.R. at 382 (emphasis added).  It is the inescapable bankruptcy context of the claims at issue here that made this dispute automatically referable to the Bankruptcy Court under the standing referral order, not the fact that the Complaint raised turnover and automatic stay violation claims.

## CONCLUSION

The Court should therefore deny Intel's motion to withdraw the reference in this case, as every other such permissive motion to withdraw the reference made previously in the Lehman bankruptcy has been denied.

Dated:  January 31, 2014  
       New York, New York

JONES DAY

/s/ Robert W. Gaffey  
Robert W. Gaffey  
Jayant W. Tambe  
Todd R. Geremia  
Mahesh Venkatakrishnan  
222 East 41st Street  
New York, New York 10017  
Telephone:  (212) 326-3939  
Facsimile:  (212) 755-7306

*Attorneys for Plaintiffs,*  
*Lehman Brothers Holdings Inc. and Lehman*  
*Brothers OTC Derivatives Inc.*